CAMPBELL, Senior Circuit Judge:
This case concerns a bankruptcy court’s refusal under 11 U.S.C. § 330(a)(2) to reimburse two law firms for certain categories of expenses the firms incurred in their work on a bankruptcy case because the court believed that the expenses of these generic types were part of a firm’s “overhead” and were already built into its hourly billing rates.

I. Background

Hillsborough Holdings Corporation and thirty-one of its affiliates filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code on December 27, 1989. Kaye, Scholer, Fierman, Hays & Handler, L.L.P. (“Kaye, Scholer”) was retained as co-counsel to the Debtors, and Stroock & Stroock & Lavan (“Stroock”) was retained as counsel to the Official Bondholders Committee. Both law firms were thus authorized to receive reasonable compensation for the actual, necessary services they rendered and to reimbursement for actual, necessary expenses they incurred in providing those services under 11 U.S.C. § 330(a).[1]
The Bankruptcy Court entered its first order on interim fee applications (“the first order”) on October 5, 1990. In that order, the court declared that several categories of expenses were attributable to “overhead” and therefore non-compensable because they were already “built into the Applicant’s hourly billing rate.” The court described these categories as: postage; secretarial charges, including overtime charges; word processing; clerical tasks; local travel expenses; meals; express mail; messenger delivery expenses; copy charges; laundry; office supplies; typesetting; and computer research charges.
Over the next several years, the court periodically issued further orders on interim fee applications. In these orders, the court denied without discussion many of the firms’ requests for reimbursement of their expenses, referring back to the principles set forth in the first order. In each order, the court reserved jurisdiction to reconsider the fee applications at the close of the case.
When the case concluded, the law firms in their final fee applications asked the court to reconsider all of the requests for expense reimbursements it had previously denied. They argued that their employment of a “user fee” billing system, which charges certain expenses directly to the particular client for whom they were identifiably incurred, and which excludes those separate expenses when setting the hourly billing rate, precluded the court from holding that such individually charged expenses constituted non-compensable “overhead.”
On October 31, 1995, the court denied this request. While recognizing that the law firms’ efforts were often “herculean,” the court stated:
[Tjhis Court is of the opinion, and repeatedly stated this opinion on numerous occasions that the awards made during the pendency of this case were a determination of the reasonable fees to be allowed for the *1401 tasks and services provided to the Debtors and the Debtors’ estates. For this reason, this Court is satisfied that the reconsideration of the fees and expenses previously-disallowed by the Court is inappropriate.
On the same day, the bankruptcy court also issued an order denying reimbursement for a portion of Stroock’s expenses from Stroock’s final fee application.
Over the course of the case, Stroock requested reimbursement for $787,791.43 in expenses of which $341,953.01 (43%) was disallowed, and Kaye, Scholer requested reimbursement for $679,711.91 in expenses of which $514,636.97 (76%) was disallowed.
The firms appealed these decisions to the district court, arguing principally that the disallowed expenses were not part of their “overhead” and were of a type ordinarily billed separately to their non-bankruptcy clients. The district court affirmed the bankruptcy court’s rulings. The firms then brought this appeal.

II. Discussion

“We note initially that an award of attorneys’ fees in a bankruptcy proceeding will be reversed only if the court abused its discretion.” In re Red Carpet Corp. of Panama City Beach, 902 F.2d 883, 890 (11th Cir.1990). “An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous.” Id.
The Bankruptcy Code provides that the bankruptcy court may award to the debtor’s attorney and professionals employed by an appointed committee under 11 U.S.C. § 1103 not only reasonable compensation for actual, necessary services rendered, but, “reimbursement for actual, necessary expenses.” 11 U.S.C. § 330(a). See note 1, supra.
Early in the present case, the bankruptcy judge entered an order advising counsel that he would not reimburse certain listed broad categories of expenses, supra, p.3. The judge stated that such categories were attributable to “overhead” and therefore already “built into the applicant’s hourly billing rate.” The judge’s declaration was made before most of the expense items in dispute were incurred and was plainly not based on findings as to the individual characteristics of expense items billed in this case. Rather it seems to have reflected the court’s more general view that attorneys’ claimed expenses falling within any of the listed categories must be deemed non-reimbursable because they are, in effect, not true “expenses,” i.e. they are by definition “overhead” and so built (apparently by their very nature) into the applicant’s hourly billing rate. There is no evidence or finding of record that the present attorneys had actually taken these classes of expenses into account when determining the hourly billing rates they charged. To the contrary, the attorneys profess to bill on a “user fee” basis, under which the hourly rate is set on the assumption that items of the classes prohibited by the court will, in many instances, be separately billed as expenses. Hence the court’s prior order, made independently of the specifics of the appellants’ billing methods, appears to reflect a legal conclusion that expenses of certain types must inevitably be presumed to be “overhead” rather than reimbursable “expenses” under 11 U.S.C. § 330(a)(2).
We emphasize the last point because our review standard varies depending upon whether we are examining a legal ruling or a fact-based issue entrusted to the bankruptcy judge’s broad discretion. Most fees issues are undoubtedly of the latter type. To the extent a bankruptcy judge were to find that claimed expenses were not actually incurred, did not sufficiently relate to the case, were unnecessary, or were excessive, we would overturn his determination only if convinced the findings were “clearly erroneous” — a very high standard, and one we would rarely be likely to find, especially in a fees situation.
Our review standard is different, however, when dealing with legal rulings. The controlling fees statute allows a court to award not only reimbursable compensation for attorney’s services but — in a separate clause — allows “reimbursement for actual, necessary expenses.” Here the bankruptcy judge declined in advance to reimburse many described categories of expenses, apparently because of his belief that the categories' he listed could never, because of their very na *1402 ture, be true “expenses” (or “actual, necessary expenses”) within 11 U.S.C. § 330(a)(2). A ruling like this, not tied to an evaluation of the particular facts of the case but based on a general interpretation of the meaning of the word “expenses” as uniformly applied in all cases, is a legal ruling.[2]
In saying this, we do not mean to suggest that appellate courts should be eager to flyspeck the niceties of fee awards. If, for example, the bankruptcy judge, upon analysis of the methodology used by these attorneys to bill computer research expenses, had determined that their calculus did not fairly mirror the actual costs of such research in the instant case, we would review that determination with marked deference to the bankruptcy court. Similarly, if the judge, on some reasonable basis, found that certain expenses claimed were items not ordinarily viewed by the bar as billable expenses, we would examine the ruling with considerable, if not unlimited, deference.
Here, however the bankruptcy judge prohibited reimbursement of whole categories of expenses, ruling that none of them were allowable, being presumptively “overhead” and built into the hourly billing rate. An assertion at this level of generality poses a legal issue. If we were to refuse to review such a ruling, we would leave attorneys in a situation where many items ruled nonreimbursable as expenses in one court might be deemed perfectly reimbursable in another. We do not think that the meaning of the statutory provision for reimbursement of “actual, necessary expenses” can fluctuate between such extremes.
Reviewing the merits of the ruling, we do not agree with the bankruptcy judge that reimbursable expenses within § 330(a)(2) are limited in the manner suggested in his first order. We accept that true “overhead” costs — the ordinary operating costs of a firm, such as rent, heat, and the like, that cannot readily be attributed to a particular case — are not separately compensable as reimbursable expenses. See In re Mulberry Phosphates, Inc. (“Mulberry II”), 169 B.R. 750, 751 (M.D.Fla.1994); In re Glasstream Boats, Inc., 146 B.R. 784, 785 (Bankr.M.D.Ga.1992); In re New Hampshire Elec. Coop., Inc., 146 B.R. 890, 892 (Bankr.D.N.H.1992); In re Lifschultz Fast Freight, Inc., 140 B.R. 482, 489 (Bankr.N.D.Ill.1992); 3 Collier on Bankruptcy ¶ 330.05[3], at 330-65 (Lawrence P. King et ah, eds., 15th ed.1997).
We also are aware that courts have differed over whether expenses such as those prohibited here are or are not sufficiently client-specific to avoid the “overhead” label. While a number of district and bankruptcy courts have declared that items such as secretarial overtime, postage, xeroxing charges, and computer research can adequately be linked to a law firm’s representation of a particular client and so are compensable, others have held, like the judge here, that these items are non-compensable “overhead.” Compare In re Mulberry Phosphates, Inc. (“Mulberry I”), 151 B.R. 948, 951 (M.D.Fla. 1992) (“Disbursements such as clerical expenses, postage and express mail services, local travel expenses and computer time do not constitute overhead in this ease because they are all attributable to an individual client through the user fee billing system.”)[3] and In re National Paragon Corp., 76 B.R. 73, 74 (E.D.Pa.1987) (holding that the auto *1403 .matic exclusion of xeroxing costs, postage and travel expenses as “overhead” was an abuse of discretion) and In re Jensen-Farley Pictures, Inc., 47 B.R. 557, 584-85 (Bankr. D.Utah 1985) (deferring to the billing practice of the profession in allowing compensation for meals, word processing, messenger service, taxi fares, parking, xeroxing, postage, express mail, and computer research costs), with In re New Hampshire Elec., 146 B.R. at 903 (concluding that expenses associated with faxing, word processing, document production and computer-assisted legal research are all non-compensable “overhead”) and In re Convent Guardian Corp., 103 B.R. 937, 940 (Bankr.N.D.111.1989) (holding that, absent extraordinary circumstances, expenses associated with secretarial overtime, postage, messenger services, and express mail are all non-compensable “overhead”) and In re Citizens Mortgage Inv. Trust, 37 B.R. 813, 821 (Bankr.D.Mass.1984) (ruling that “overtime to employees, rent, express charges, ordinary postage, and routine copying” are all non-compensable “overhead”).
We think that the legislative history of the current bankruptcy statute is inconsistent with the narrow reading of § 330(a)(2) adopted below. Congress has recently indicated a desire to promote the same billing practices in bankruptcy eases as in other branches of legal practice. While “user billing” is certainly not the only billing practice employed today, its use is widespread. A good many reputable firms bill as expenses many of the items rejected in advance by the bankruptcy judge here. Moreover, as all or most of the prohibited items can be readily calculated in reference to work done in a specific case, it is far from obvious that they are, by their nature, non-billable overhead.
Before 1978, courts applied “the spirit of economy” as a factor to be weighed in awarding attorneys’ fees in bankruptcy cases. See In the Matter of First Colonial Corp. of Am., 544 F.2d 1291, 1299 (5th Cir.), cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977); 3 Collier on Bankruptcy, ¶ 330.04[3][a] (Lawrence P. King, et al., eds., 15th ed.1997). Congress rejected this factor when it enacted the Bankruptcy Reform Act of 1978. Congress concluded that taking economy into account interfered too much with the policy of encouraging skilled professionals to participate in bankruptcy cases:
Attorneys’ fees in bankruptcy cases can be quite large and should be closely examined by the court. However bankruptcy legal services are entitled to command the same competency of counsel as other cases. In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable services other than in a case under title 11____ Notions of economy of the estate in fixing fees are outdated and have no place in a bankruptcy code.
124 Cong. Ree. 33,994 (daily ed. October 5, 1978) (statement of Sen. DeConeini), reprinted in 1978 U.S.C.C.A.N. 6505, 6511; see also In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 850 (3d Cir.1994) (“Congress determined, it appears, that on average the gain to the estate of employing able, experienced, expert counsel would outweigh the expense to the estate of doing so, and that unless the estate paid competitive sums it could not retain such counsel on a regular basis.”); 3 Collier on Bankruptcy, ¶ 330.04[3][b] (Lawrence P. King, et al., eds., 15th ed. 1997) (“The economy factor was abandoned under the Bankruptcy Code in favor of the new policy that attorneys engaged in bankruptcy eases should receive compensation in parity with that received by attorneys performing services in comparable situations.”).
The policy of comparable compensation is specifically written into § 330(a)(1), which expressly includes “the cost of comparable services other than in a case under this title” as a factor to be considered in establishing the compensation of attorneys working on a bankruptcy case. 11 U.S.C. § 330(a)(1).
To be sure, Section 330(a)(2), which provides for the reimbursement of bankruptcy attorneys’ actual, necessary expenses, does not make explicit reference to the cost of comparable services outside of bankruptcy as does (a)(1). Nor does (a)(2) supply criteria as to how to differentiate expenses from non-reimbursable “overhead.” But if the cost of comparable services is a relevant factor in setting compensation for services *1404 under (a)(1), it would logically seem also to be a relevant factor in determining what categories to treat as reimburseable expenses under (a)(2). In many cases, the amount of the hourly fees charged by lawyers and their firms for services may be linked to the categories of expenses that they bill separately. Professionals who make a practice of billing separately for such items as computer research costs and secretarial overtime may well charge lower hourly fees for their services than will professionals who absorb such costs as part of their “overhead.” See generally In the Matter of D’Lites of America, Inc., 92 B.R. 554, 556 (Bankr. N.D.Ga.1988) (recognizing the relationship between a law firm’s billing rate and the categories of expenses charged separately); In re Kreidle, 85 B.R. 573, 576 (Bankr.D.Colo.1988) (same). We think that if certain categories of expenses are commonly billed by practitioners in non-bankruptcy practice, they should not be arbitrarily excluded under (a)(2).
In the present case, the bankruptcy court gave no reason for its refusal to reimburse the listed categories of expenses other than its unexplained conclusion they are “overhead” and built into the applicants’ hourly billing rate. As already explained, many, if not all, of the excluded expense categories seem rationally related to services performed for the individual clients in a particular case. The court’s announced assumption that the listed categories could not be viewed as anything but non-compensable “overhead” built into the applicants’ billing rate is unsupported by evidence of the billing practices in non-bankruptcy matters of comparable law firms or by reference to any other professional source. Nor, as we have previously noted, did the court find as a fact (nor is there any record evidence to support a finding) that the hourly billing rates charged in this ease were constructed so as to include the categories of expenses at issue. The ruling seems to have been based rather on the judge’s personal belief that it is unseemly for items of this nature to be regarded as anything but unbillable “overhead.” On this record, we cannot endorse the theory that the listed items necessarily belong in a non-compensable “overhead” category. Most, perhaps all, of these items will vary from client to client; in our experience, they are often billed separately» as expenses by reputable lawyers and law firms. We doubt, therefore, that they can be held to be “overhead” in some invariable, absolute legal sense. This is not to deny the court’s authority to exclude any of the expenses billed here if found to be wrongly calculated, overstated, or, in some way, not “actual, necessary expenses.” Nor would we rule out the court’s authority to adjust the Appellants’ hourly billing charges if found excessive in light of the claimed expenses. But no specific findings of this nature were made.
The Third Circuit has held, and we agree, that the best approach to achieving the goal of full — but not excessive — compensation “is to rely on the market, subject to the modification that the court will, in practical terms, act as a surrogate for the estate, reviewing the fee application much as a sophisticated non-bankruptcy client would review a legal bill.” In re Busy Beaver, 19 F.3d at 848. This is not to say that a bankruptcy court must always move in lockstep with the billing structure a law firm employs. Obviously it is a court’s duty to reject a flawed, excessive or illegal billing methodology, and there may be special reasons articulated by a court for disallowing even cognizable expenses in light of the facts of a particular case. The court has considerable discretion over the amounts awarded by ways of fees and expenses; the statute provides that the court “may award” fees and expenses, indicating a broad discretionary grant. But the court may not arbitrarily exclude by fiat whole categories of otherwise reimburseable expenses from the coverage of § 330(a)(2).
As the court erred in stating its rejection of these categories of expenses as a rule of law concerning what was necessarily included within “overhead,” we remand for reconsideration of Appellants’ compensation and expenses. On remand, the bankruptcy court should recognize that the firms’ hourly rates were established on a “user fee” basis and determine a total compensation that fairly reimburses, among other things, the firms’ actual and necessary expenses as provided in § 330(a)(2). The compensation should, moreover, fit within the above-discussed concept of “comparable compensation.” The bank *1405 ruptcy court is directed to make findings, in so doing, from which it will be possible for the district court and ourselves, upon review, to ascertain the various components of the total compensation that is awarded.
VACATED and REMANDED.

. (a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—
(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
(2) reimbursement for actual, necessary expenses.
11 U.S.C. § 330(a).

. As such it amounts to an abuse of discretion if it applies a wrong standard. In re Red Carpet, 902 F.2d at 890. We review legal rulings de novo.

. Appellants argue that because Mulberry I was decided in this bankruptcy court’s district — and in fact overruled a fees decision by this bankruptcy judge that was similar to the one below — the bankruptcy judge should have followed Mulberry I and allowed the expenses. We have been presented with no Supreme Court or court of appeals precedent on whether decisions by a district court will constitute binding precedent for the bankruptcy courts in the same district, and the few district courts to consider the issue are split. Compare In re KAR Dev. Assocs., L.P., 180 B.R. 629, 640 (D.Kan.1995) (holding that bankruptcy courts are not bound by district court precedent, even from their own district); with Bryant v. Smith, 165 B.R. 176, 180-81 (W.D.Va.1994) (holding that bankruptcy courts are bound by district court precedent from their own district). This court, of course, is not bound by district court precedent, and, since the standard of review would not change either way, we- see no reason to decide whether district court decisions may constitute binding precedent for bankruptcy courts.