**In re HILLSBOROUGH HOLDINGS CORPORATION, et al., Debtors.**

Bankruptcy Nos. 89–9715–8P1 to 89–9746–8P1, 90–11997–9P1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 19, 1998.

Don M. Stichter, Stichter, Riedel, Blaim & Prosser, P.A., Tampa, FL, for Debtor.

Andrew A. Kress, Kaye, Scholer, Fierman, Hays & Handler, New York City, Co-Counsel for Debtor.

Daniel H. Golden, Stroock & Stroock & Lavan, New York City, for Official Bondholders Committee.

### ORDER ON RECONSIDERATION PURSUANT TO ORDER OF REMAND

ALEXANDER L. PASKAY, Chief Judge.

These are the confirmed Chapter 11 cases of Hillsborough Holdings Corporation/Walter Industries and their thirty-two affiliates (Debtors). The Joint Plan of Reorganization of these Debtors was confirmed on March 2, 1996, and the cases of the majority of the affiliates have actually been closed already. Nonetheless, since several unresolved contested matters and appeals are still pending, the lead case of the parent of the affiliates is still open.

The present matter under consideration is precisely one of these matters and involves a decision of the Eleventh Circuit Court of Appeals issued on November 18, 1997. *See In re Hillsborough Holdings Corporation,* 127 F.3d 1398 (11th Cir.1997). The appeals before the Eleventh Circuit were filed by Stroock & Stroock & Lavan L.L.P. (Stroock) and Kaye, Scholer, Fierman, Hays & Handler (Kaye Scholer) (collectively the "Law Firms"). The appeals were directed to pre-

vious Orders entered by this Court which disallowed certain expense reimbursement requests by the Law Firms. On appeal the District Court entered Orders affirming this Court's Order. Stroock and Kaye Scholer's appeal to the Eleventh Circuit followed.

The Eleventh Circuit concluded that this Court erred as a matter of law in rejecting certain categories of expenses for which the Law Firms sought reimbursement. Accordingly, the Eleventh Circuit remanded the matter to the District Court with directions to further remand the matter to this Court to determine the *total compensation* that fairly reimburses, among other things, the Law Firms' actual and necessary expenses. The Eleventh Circuit further directed this Court to make specific findings from which it will be possible for the District Court and the Eleventh Circuit to ascertain the various components of the total compensation that is awarded.

In order to better understand the present matter under consideration it is necessary to briefly summarize the history of the treatment of the numerous fee applications and requests for expense reimbursements filed in these Chapter 11 cases during the administration of the case.

Shortly after the commencement of these Chapter 11 cases, this Court realized that soon the Court would be faced with a multitude of interim fee applications and requests for reimbursement of expenses every one hundred and twenty days, as authorized by 11 U.S.C. § 331. This unattractive proposition was based on the fact that the Debtors alone employed more than two hundred and forty attorneys to render non-bankruptcy legal services. In all, this Court would be faced with more than three hundred interim fee applications by professionals including accountants, financial advisors, investment bankers and experts used by the Debtors in a multitude of actual and anticipated litigations. In order to put all parties of interest on notice that because of the enormous volume of fee applications and requests for expense reimbursements, this Court set forth initially specific policy guidelines concerning allowance of expenses. Accordingly, this Court in its orders entered on October 7, 1990 (First Interim Order, Doc. No. 1109) and on December 21, 1990 (Second Interim Order, Doc. No. 1450B), respectively, set forth that any fee allowance awarded would represent a full and final determination of fees awarded for the time period covered and that there was no "hold-back" on fees, a device used by some courts when faced with numerous interim fee applications. The Orders also made it clear that certain specific categories of expenses would be considered overhead items and, thus, were not reimbursable. After the entry of the Second Interim Order, this Court entered several hundred orders on subsequent interim fee applications and, consistent with the Court's announced policy, denied certain expense items sought by the Law Firms.

Neither Law Firm requested this Court to make findings of fact stating the basis for the particular fee award and expense allowance, although the interim fee orders specifically granted leave to request such findings. Neither Law Firm challenged any of the interim orders by seeking to file interlocutory appeals, in spite of the fact that it was made clear to all interested parties that each interim order represented the final determination of the reasonable fee and compensable expenses for the period involved.

The fact that none of the other hundreds of professionals complained and challenged the disallowance of the expense items which this Court specified at the beginning of these Chapter 11 cases were non-compensable "overhead" is clearly indicative that all professionals understood this Court's policy on expense item allowances.

## FEE APPLICATIONS OF STROOCK

Stroock was employed with the approval of this Court to represent the Official Bondholders Committee (Committee) in these Chapter 11 cases. During the course of the administration of these cases, between May 21, 1990 and April 11, 1995, Stroock filed fifteen interim fee applications and requests for expense reimbursements, plus a final application. In all, Stroock requested $6,750,407.50 in fees and $850,825.13 for reimbursement of expenses. Stroock also sought a "bonus" or fee enhancement. This Court awarded fees to Stroock in the amount of

$6,216.606 or 92.09% of the requested amount in the applications; and awarded expenses in the aggregate amount of $477,-350.45 or 56.10% of the requested amount. In addition, this Court awarded Stroock a fee enhancement of $621,660.60 which brought the aggregate amount of fees to $6,838,266.60, or 101.30% of the requested amount.

## FEE APPLICATIONS OF KAYE SCHOLER

Kaye Scholer was counsel of record for the Debtors and was authorized to represent the Debtors as Debtors–In–Possession. At this point it should be noted that Kaye Scholer was co-counsel with the law firm of Stichter, Riedel, Blain, & Prosser. Kaye Scholer filed sixteen fee applications and requests for expense reimbursement seeking fees totalling $8,262,572.75 and expense reimbursements totaling $946,546.82. After disallowing $240,-000.00 in fees, which related to an aborted suit filed by Kaye Scholer against the then majority equity interest of Kravis Kohlberg Roberts, this Court allowed $7,352,382.50 in fees, or 88.98% of the amount requested in the applications; and awarded $223,599.44 as reimbursement of expenses, or 23.62% of the amount requested. In addition, this court awarded Kaye Scholer a fee enhancement of $143,953.33 which brought the aggregate amount of fees to $7,496,335.83, or 90.73% of the requested amount.

## PROPER SCOPE OF REVIEW ON REMAND

In order to comply with the mandate of the Court of Appeals, Stroock contends that this Court's task on remand is merely to determine whether the previously disallowed expense items were reasonable. This Court is constrained to reject this narrow and limited interpretation of the decision. Rather, this Court is satisfied that the Eleventh Circuit specifically directed this Court to determine the *total* compensation that fairly reimburses, among other things, the firm's actual and necessary expenses. Be that as it may, this Court is also directed to make findings in order to enable the reviewing court to ascertain the various components of the *total* that is awarded. In this connection it is appropriate to note the comments of Judge Carnes, who in dissent stated,

While the bankruptcy court on remand is required to recognize the law firms' user fee method, it is not required to approve the same hourly rates that it found appropriate when a non-user fee method of expense reimbursement was contemplated by the court. On remand, the bankruptcy court is free to adjust those large hourly rates downward in view of the additional amount of expense the majority has dictated must be counted separately instead of being included as overhead.

127 F.3d at 1407.

As pointed out by Judge Carnes, the majority did not rule out this Court's authority to adjust the Law Firm's hourly billing charges if found to be excessive in light of the claimed expenses. This Court is not unmindful of the fact that the Eleventh Circuit endorsed the "user fee" principle and held that it should govern all allowances for expense reimbursement in Bankruptcy cases. *Hillsborough Holdings Corp., supra* at 1404. Even if one accepts the user fee principle, however, it is incumbent upon the reviewing court to analyze the expenditures to determine if they were necessary. It is inappropriate to accept an item just because it was charged to a client. Thus, having carefully reviewed the decision of the Court of Appeals, it appears that this Court has several options. First, it may review the thousands and thousands of expenses itemized in the thirty-two applications of both Law Firms to determine whether a particular item was reasonable and necessary. This option presents an utterly mind-boggling, Herculean task which this Court is unwilling, but most importantly, unable to perform unless it totally shuts down its operation as a Bankruptcy Court or the Eleventh Circuit authorizes the employment of at least four additional law clerks to sift through the thousands of pages of difficult to read computer printouts.

The second option is that this Court may blindly allow all previously disallowed expense items even though it is impossible to make an intelligent assessment of whether several items were reasonable and *necessary* as presented. For example, this Court denied requests for reimbursement of local travel which were presented without indications of who incurred the expense, why the expense was incurred, and on what matter

the requesting party was working. Also, the reimbursement of undocumented meal expenses was denied. Next, this Court disallowed overtime charges presented without any indications of who worked the overtime, why it was necessary and whether it was caused by procrastination in meeting a deadline at the last minute or by the large volume of work to be performed under short time pressure.

One of the most difficult expense items to evaluate is computer research because without identifying the subject matter researched as was the case here, it is impossible to evaluate whether the time spent was justified. Courts have required that a showing be made that the use of computers cuts down the total time necessary to research a particular issue in order to support the use of computer research as necessary. *See e.g., In re Automobile Warranty Corp.,* 138 B.R. 72, 83 (Bankr.D.Colo.1991).

Nevertheless, this Court is directed to follow the mandate requiring specific findings item by item, a task this Court is unable to perform. Therefore, this Court is constrained to reinstate the previously disallowed requests for expense reimbursement, however, tempered by a reconsideration of the previously allowed fees. As noted earlier, this Court awarded each Law Firm a fee enhancement or bonus, Stroock receiving a bonus of $621,660.61 and Kaye Scholer receiving a bonus of $143,953.53 although Kaye Scholer did not even request one.

It cannot be gainsaid that professionals are not entitled to a fee enhancement as a matter of right and the allowance, if made, is strictly within the discretion of the court. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), *Grant v. George Schumann Tire & Battery Co.,* 908 F.2d 874, 877 (11th Cir.1990). Moreover, there is respectable authority to support the proposition that attorneys are expected to render first class service and only in a very rare instance is an enhancement warranted. *Id.* at 880.

In light of the total fee allowance in excess of $15 million granted to the Law Firms, this Court has reconsidered the Law Firms' fee enhancements and is satisfied that the previous allowance was improvident and should not have been made. Accordingly, for the reasons stated, this Court will reluctantly reinstate the previously disallowed expense items. In addition, in its discretion, upon reconsideration, this Court will disallow the fee enhancement in the amount of $621,-660.61 awarded to Stroock and the $143,-953.53 awarded to Kaye Scholer.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the previously disallowed requests for reimbursement of expenses by Stroock in the amount of $330,562.01 is hereby allowed. The previously allowed fee enhancement of $621,660.60 is hereby disallowed. Therefore, Stroock shall return to the Debtor the amount of $291,098.59. It is further

ORDERED, ADJUDGED AND DECREED that the previously disallowed requests for reimbursement of expenses by Kaye Scholer in the amount of $514,636.97 is hereby allowed. The previously allowed fee enhancement of $143,953.33 is hereby disallowed. Therefore, the Law Firm of Kay Scholer is hereby entitled to an administrative expense in the amount of $370,683.64.