Stephen R. BOYES and Patrice Boyes, Plaintiffs-Appellants,

v.

SHELL OIL PRODUCTS COMPANY, Mobil Oil Company, and Tenneco Oil Company, Defendants-Appellees.

No. 98-3692.

United States Court of Appeals,

Eleventh Circuit.

Jan. 4, 2000.

Appeal from the United States District Court for the Northern District of Florida. (No. 97-00001-CV-MMP), Maurice M. Paul, Judge.

Before CARNES, Circuit Judge, and RONEY and HILL, Senior Circuit Judges.

CARNES, Circuit Judge:

Stephen and Patrice Boyes own property in Gainesville, Florida that is allegedly contaminated with petroleum waste as a result of service stations previously owned or operated by Shell Oil Company ("Shell") and Tenneco Oil Company ("Tenneco").[1] The Boyes sued Shell and Tenneco for violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901-6992, seeking an injunction requiring remediation of the contamination.[2] They also asserted various state law claims. On the basis of *Burford* abstention and, alternatively, the primary jurisdiction doctrine, the district court dismissed the RCRA claims without prejudice. In its analysis, the court relied heavily on § 376.308(5) of the Florida Statutes, which prohibits the Boyes' suit for remediation. The district court then declined to exercise its supplemental jurisdiction over the state law claims. The Boyes appeal.

In Part I of this opinion, we outline the RCRA and its regulatory scheme and Florida's State Underground Petroleum Environmental Response Act and its regulatory scheme. We then describe the facts

---

[1] In its brief to this Court, Tenneco asserted that it is not an owner or operator within the meaning of the RCRA. We leave that issue for the district court to decide on remand.

[2] The Boyes also sued Mobil Oil Company ("Mobil"), but Mobil has since been dismissed from the suit. The Boyes' claims against Mobil are not at issue in this appeal.

and procedural history of the case. Part II contains the standard of review. In Part III, we briefly outline *Burford* abstention and the primary jurisdiction doctrine and their applicability in a preemption case. We then provide a general discussion of federal preemption and proceed to consider whether Florida law is preempted by the RCRA.

As we explain in Part III, the RCRA neither expressly preempts all state law, nor occupies the entire field of underground storage tank regulation. However, § 376.308(5) of the Florida Statutes is in direct conflict with 42 U.S.C. § 6972, the RCRA citizen suit provision, and is thus preempted under the Supremacy Clause of the Constitution. Because § 376.308(5) is preempted, we conclude that the district court erred in dismissing the Boyes' suit against Shell and Tenneco.

## I. BACKGROUND

### A. FEDERAL STATUTORY FRAMEWORK

In 1976, Congress enacted the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901-6992, "to promote the protection of health and the environment...." 42 U.S.C. § 6902(a). The "RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 483, 116 S.Ct. 1251, 1254, 134 L.Ed.2d 121 (1996) (citation omitted). As part of the RCRA, Congress provided for federal regulation of underground storage tanks. *See* 42 U.S.C. §§ 6991-6991i. The Environmental Protection Agency ("EPA") subsequently promulgated release detection, prevention and corrective action regulations for underground storage tanks, and those regulations are enforceable by the EPA Administrator. *See id.* § 6991b; 40 C.F.R. pt. 280 (1999).

A state underground storage tank program, however, can operate "in lieu of the Federal program" if the EPA Administrator formally approves the state program. 42 U.S.C. § 6991c(d)(2).[3] The EPA

---

[3]Section 6991c(d) reads as follows:

(d) EPA determination

(1) Within one hundred and eighty days of the date of receipt of a proposed State program, the Administrator shall, after notice and opportunity for public comment, make a determination whether the State's program complies with the provisions of this section

Administrator must approve a state program if, "after notice and opportunity for public comment," he determines that the program complies with the RCRA provisions and "provides for adequate enforcement of compliance...." *Id.* § 6991c(d)(1). The RCRA also contains a citizen suit provision which grants federal district courts jurisdiction to hear suits against any person alleged to be in violation of any RCRA regulation or against any person for "past or present ... storage ... or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." *Id.* § 6972(a).

B. STATE STATUTORY FRAMEWORK

In 1986, under the State Underground Petroleum Environmental Response Act, Florida adopted the Early Detection Incentive ("EDI") program. *See* Fla. Stat. § 376.3071(9). If a site contaminated by petroleum waste from an underground storage tank is accepted into the EDI program, Florida will absorb the full cost of remediating the site. *See* § 376.3071(9)(b).[4] The Florida Department of Environmental Protection

--------

and provides for adequate enforcement of compliance with the requirements and standards adopted pursuant to this section.

(2) If the Administrator determines that a State program complies with the provisions of this section and provides for adequate enforcement of compliance with the requirements and standards adopted pursuant to this section, he shall approve the State program in lieu of the Federal program and the State shall have primary enforcement responsibility with respect to requirements of its program.

42 U.S.C. § 6991c(d).

[4]Section 376.3071(9)(b) reads as follows:

(9) Early detection incentive program.—...

(b) When reporting forms become available for distribution, all sites involving incidents of contamination from petroleum storage systems initially reported to the department at any time from midnight on June 30, 1986, to midnight on December 31, 1988, shall be qualified sites, provided that such a complete written report is filed with respect thereto within a reasonable time. Subject to the delays which may occur as a result of the prioritization of sites under paragraph 5(a) for any qualified site, costs for activities described in paragraphs (4)(a)-(e) shall be absorbed at the expense of the [Inland Protection Trust Fund], without recourse to reimbursement or recovery, with the following exceptions [not applicable in this case]:

Fla. Stat. § 376.3071(9)(b).

("FDEP")[5] assigns each contaminated site a priority ranking and undertakes remediations in accordance with those rankings. *See* § 376.3071(5).[6] Florida later enacted § 376.308(5), which prohibits any person from pursuing any "administrative or judicial action" to require remediation of a contaminated site that is eligible for the EDI program before the state has committed funding for the remediation. *See* § 376.308(5).[7]

---

[5]The FDEP was formerly known as the Florida Department of Environmental Regulation. For consistency, we will use the term FDEP throughout this opinion.

[6]Section 376.3071(5) reads as follows:

> (5) Site selection and cleanup criteria.—
>
> (a) The department shall adopt rules to establish priorities for state-conducted cleanup at petroleum contamination sites based upon factors that include, but need not be limited to:
>
> 1. The degree to which human health, safety, or welfare may be affected by exposure to the contamination;
>
> 2. The size of the population or area affected by the contamination;
>
> 3. The present and future uses of the affected aquifer or surface waters, with particular consideration as to the probability that the contamination is substantially affecting, or will migrate to and substantially affect, a known public or private source of potable water; and
>
> 4. The effect of the contamination on the environment.
>
> Moneys in the fund shall then be obligated for activities described in paragraphs (4)(a)-(e) at individual sites in accordance with such established criteria....

Fla. Stat. § 376.3071(5).

[7]Section 376.308(5) reads as follows:

> (5) Effective July 1, 1996, and operating retroactively to March 29, 1995, notwithstanding any other provision of law, judgment, consent order, order, or ordinance, no person who owns or operates a facility or who otherwise could be responsible for costs as a result of contamination eligible for restoration funding from the Inland Protection Trust Fund shall be subject to administrative or judicial action, brought by or on behalf of the state or any local government or any other person, to compel rehabilitation in advance of commitment of restoration funding in accordance with a site's priority ranking pursuant to s. 376.3071(5)(a) or to pay for the costs of rehabilitation of environmental contamination resulting from a discharge of petroleum products that is eligible for restoration funding from the Inland Protection Trust Fund. For purposes of chapter 95, a cause of action to compel rehabilitation of environmental contamination at a

## C. FACTS AND PROCEDURAL HISTORY

From 1958 to mid-1982, Shell Oil Company ("Shell") owned and operated a gasoline service station at 404 South Main Street in Gainesville, Florida.[8] From 1980 to late 1985 or early 1986, Tenneco Oil Company ("Tenneco") leased property at 403 South Main Street in Gainesville, Florida on which a gasoline station was located. The 403 and 404 South Main Street sites are across the street from each other at an intersection. Both sites are contaminated with petroleum waste. The 403 South Main Street site that Tenneco leased was accepted into Florida's EDI program in October 1987; the 404 South Main Street site that Shell owned was accepted into the EDI program in October 1988.

The Boyes purchased 602 South Main Street, also in Gainesville, Florida, in July 1992. In March 1996, they purchased 601 South Main Street. The intersection where the 403 and 404 South Main Street properties are located is approximately two city blocks from the sites currently owned by the Boyes. The FDEP recognizes the Boyes' property as being within a plume of underground petroleum contamination that must be addressed during the remediation of the Shell and Tenneco sites.[9]

Pursuant to 42 U.S.C. § 6972(c), the Boyes gave written notice to Shell, Tenneco, Mobil, the EPA, and the FDEP on June 19, 1996 of their intent to file suit under the RCRA. They filed suit against Shell,

---

facility resulting from a discharge of petroleum products that is eligible for restoration funding, or to compel payment of costs for environmental contamination resulting from a discharge of petroleum products that is eligible for restoration funding, shall not accrue until restoration funding can be committed to the facility or environmental contamination in accordance with the priority ranking.... Nothing herein shall preclude any person from bringing civil action for damages or personal injury, not to include the cost of restoration or the compelling of restoration in advance of the state's commitment of restoration funding in accordance with a site's priority ranking pursuant to s. 376.3071(5)(a)....

Fla. Stat. § 376.308(5).

[8]Most, if not all, of the facts we refer to appear to be undisputed by the parties. In any event, given the posture of the case, we construe the record evidence in the light most favorable to the Boyes. To the extent that there is any dispute about the facts, the district court can resolve that on remand.

[9]The Boyes' preference for the federal program over the Florida program is based on their belief, which has substantial basis in reality, that the Florida program is vastly underfunded. They contend that if they are forced to rely on the Florida program, it will be many years before the contamination is remediated.

Tenneco, and Mobil on January 2, 1997.[10]  Counts I and II alleged violations of the RCRA, 42 U.S.C. § 6972(a)(1)(A) and (B) respectively, and sought a permanent injunction requiring the removal of the entire petroleum contamination and its adverse impacts, as well as costs and attorney fees.  Counts III, IV, V, VI and VII raised various state law claims and sought compensatory damages, as well as costs and attorney fees.

On October 23, 1988, the district court dismissed without prejudice Counts I and II, the RCRA counts, on the grounds that the district court was abstaining from exercising its jurisdiction based on the *Burford* abstention doctrine and, in the alternative, on the primary jurisdiction doctrine.  Having abstained from exercising jurisdiction over the federal law counts, the district court also declined to exercise its supplemental jurisdiction over the Boyes' pendant state law claims, Counts III, IV, V, VI and VII, and dismissed them without prejudice.  The Boyes filed this appeal.

## II. STANDARD OF REVIEW

While we ordinarily review the grant of motions to dismiss or summary judgment *de novo, see Parks v. City of Warner Robins, Georgia,* 43 F.3d 609, 612-13 (11th Cir.1995), "a district court's decision to abstain will only be reversed upon a showing of abuse of discretion."  *Rindley v. Gallagher,* 929 F.2d 1552, 1554 (11th Cir.1991) (citations omitted).  "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination...."  *American Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 427 (11th Cir.1999) (quoting *In re Hillsborough Holdings Corp.,* 127 F.3d 1398, 1401 (11th Cir.1997) (internal citation and quotation omitted)).

## III. DISCUSSION

### A. ABSTENTION

The decision that gave *Burford* abstention its name is *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).  In a later case, the Supreme Court summarized *Burford* abstention as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies:  (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose

---

[10]As we have mentioned, Mobil was later dismissed from the lawsuit.

importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) (citations and internal quotations omitted). The purpose of *Burford* abstention is to "protect[ ] complex state administrative processes from undue federal interference...." *Id.* at 362, 109 S.Ct. at 2515.

The primary jurisdiction doctrine is similarly concerned with protecting the administrative process from judicial interference. *See United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). It is "a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper,* 507 U.S. 258, 268, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993) (citations omitted). "[T]he main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation." *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1310 (2nd Cir.1990) (citations omitted).[11] In the context of this case, *Burford* abstention and the primary jurisdiction doctrine are "different labels for the same thing." *PMC, Inc. v. Sherwin-Williams Co.,* 151 F.3d 610, 619 (7th Cir.1998).

Abstention under *Burford* and under the primary jurisdiction doctrine is rarely, if ever, appropriate when federal law preempts state law. *See Baggett v. Department of Prof'l Regulation, Bd. of Pilot Comm'rs,*

---

[11]The Second Circuit in *County of Suffolk* expressed doubt about whether the primary jurisdiction doctrine is even applicable "where, as here, the claim is brought under federal law" and the referral would be to a state agency. *County of Suffolk,* 907 F.2d at 1310. It reasoned that: "The uniformity rationale clearly does not support application of the doctrine in the federal question/state agency context. Indeed, since application of the doctrine in such a context might well result in review by fifty different state agencies with fifty different charters, resort to state agencies is more likely to ensure non-uniformity." *Id.*

We need not decide whether the primary jurisdiction doctrine could ever justify deference in favor of state administrative agencies, because even if it can, deference was not appropriate in this case for reasons we will explain.

717 F.2d 521, 524 (11th Cir.1983) ("When, because of preemption, a particular state proceeding is beyond its regulatory authority, the need for protection of the state's comprehensive regulatory scheme, to the extent that it is legitimate, lends no support for abstention....").[12] The parties agree that abstention was inappropriate in this case if the RCRA preempted Florida law. What they disagree about, and what is the decisive issue in this case, is whether federal law preempted otherwise applicable Florida law.[13]

---

[12]Other circuits agree that abstention is generally inappropriate in a preemption case. *See In re Pan American Corp.,* 950 F.2d 839, 846-47 (2nd Cir.1991) ("The abstention doctrines thus manifest federal respect for State law and policy. These concerns, however, are not implicated when federal questions are presented since supremacy clause questions are essentially one[s] of federal policy. We therefore have observed that [a]bstention ... is not appropriately invoked in a preemption case." (citations and quotations omitted)); *Neufeld v. City of Baltimore,* 964 F.2d 347, 350-51 (4th Cir.1992) (finding *Burford* abstention inappropriate in preemption claim because it did not "present difficult questions of state law concerning peculiarly local issues, nor would a federal decision disrupt the efficacy of an important and coherent state policy"); *International Bhd. of Elec. Workers, Local Union No. 1245 v. Public Serv. Comm'n of Nev.,* 614 F.2d 206, 212 n. 1 (9th Cir.1980) ("The purpose of *Burford* abstention is to avoid federal intrusion into matters which are largely of local concern and which are within the special competence of local courts. A preemption claim alleges in essence that Congress has determined that particular matters are of national concern and should be administered by national, rather than local, institutions. If a preemption claim is well-founded, therefore, *Burford* abstention cannot be appropriate.").

We note, however, there may be some disagreement about the applicability of *Burford* abstention to citizen suits brought under the RCRA. *Compare Coalition for Health Concern v. LWD, Inc.,* 60 F.3d 1188, 1193-95 (6th Cir.1995) (finding *Burford* abstention appropriate with respect to RCRA claims) *and Palumbo v. Waste Technologies Indus.,* 989 F.2d 156, 159-60 (4th Cir.1993) (same) *with PMC, Inc.,* 151 F.3d at 619 (finding *Burford* abstention inappropriate under facts presented, but recognizing possibility in other cases). Although we believe *Burford* abstention is inappropriate in a preemption case such as this one, we also find *Coalition for Health Concern* and *Palumbo* distinguishable from the present case. In *Coalition for Health Concern,* Kentucky had enacted its own regulatory program for hazardous waste disposal and received approval from the EPA Administrator pursuant to 42 U.S.C. § 6926. *See Coalition for Health Concern,* 60 F.3d at 1190. In *Palumbo,* the plaintiffs were bringing "a collateral attack on the prior permitting decisions of the federal EPA. The RCRA judicial review provision plainly forbids such an attack...." *Palumbo,* 989 F.2d at 159 (citing 42 U.S.C. § 6976(b)). The *Palumbo* court applied *Burford* abstention to the plaintiffs' claims only "[t]o the extent that plaintiffs challenge separately the permitting decisions of the Ohio EPA...." *Id.* In the present case, unlike the facts in *Coalition for Health Concern* and *Palumbo,* Florida does not have a federally approved state program, and the Boyes are not bringing a collateral attack on the decisions of the federal EPA.

[13]Because the district court abstained without reaching the question it should have begun with, the preemption issue, we do not have the benefit of that court's views on the preemption issue. We could, of course, remand the case with directions for the district court to address the preemption issue, but we choose not to do so. There are no subsidiary factual issues that need to be decided and the record is as developed as it will ever be on the issue. Although the standard of review is abuse of discretion, in this

B. PREEMPTION

Congressional intent governs our determination of whether federal law preempts state law. *See Gade v. National Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 96, 112 S.Ct. 2374, 2381, 120 L.Ed.2d 73 (1992) (plurality). If Congress so intends, "[p]re-emption ... is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Id.* at 98, 112 S.Ct. 2374 (citation and quotation omitted). The Supreme Court has recognized three types of preemption: (1) express preemption, where the statute contains "explicit pre-emptive language," (2) field preemption, "where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," and (3) conflict preemption, "where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citations and quotations omitted).

The RCRA does not expressly preempt Florida's program. There is no statutory directive that requires the RCRA to displace all state laws regulating underground storage tanks. Field preemption is equally inapplicable. Congress explicitly sought to establish "a viable Federal-State partnership to carry out" the purposes of the statute. 42 U.S.C. § 6902(a)(7). Congress provided for cooperative agreements pursuant to which a state could implement the RCRA regulations. *See id.* § 6991b(h)(7)(A). Moreover, a state can operate its own underground storage tank program in lieu of federal regulation, provided it obtains the explicit approval of the EPA Administrator. *See id.* § 6991c(d). The RCRA also expressly permits a state to adopt underground storage tank requirements that are more stringent than the federal program. *See id.* § 6991g. As the Fourth Circuit has put it, instead of comprehensively preempting state law, the RCRA "seems to

---

particular context it amounts to de novo review, because the case turns on a purely legal issue of preemption and we decide such issues de novo. *See Lewis v. Brunswick Corp.,* 107 F.3d 1494, 1498 (11th Cir.1997). Moreover, the parties have briefed and argued the preemption issue, we are focused on it, and a remand would unnecessarily delay the disposition of this case. *See Ochran v. United States,* 117 F.3d 495, 503 (11th Cir.1997) ("[A]lthough the general rule is that we do not address arguments that were not addressed by the district court, we unquestionably have the discretion to do so."); *Taylor v. Food World, Inc.,* 133 F.3d 1419, 1423 n. 2 (11th Cir.1998) ("[T]he parties have briefed this issue, and judicial economy counsels in favor of our addressing it.") (citing *Lopez v. First Union Nat'l Bank of Fla.,* 129 F.3d 1186, 1189 n. 1 (11th Cir.1997)).

contemplate state law action...." *Feikema v. Texaco, Inc.,* 16 F.3d 1408, 1413 (4th Cir.1994); *see also Blue*

*Circle Cement, Inc. v. Board of County Comm'rs of the County of Rogers,* 27 F.3d 1499, 1504 (10th Cir.1994)

(finding no "express preemption nor implied field preemption of state and local hazardous waste regulations

that are more restrictive than RCRA"); *Old Bridge Chemicals, Inc. v. New Jersey Dept. of Envtl. Protection,*

965 F.2d 1287, 1296 (3rd Cir.1992) ("RCRA sets a floor, not a ceiling, for state regulation of hazardous

wastes.").

Because neither express nor field preemption is applicable, the question becomes whether the Florida

law regulating underground storage tanks conflicts with the RCRA. "Any state law that conflicts with federal

law is preempted by the federal law and is without effect under the Supremacy Clause of the Constitution."

*Lewis,* 107 F.3d at 1500 (citing *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617,

120 L.Ed.2d 407 (1992)).[14]   The RCRA, however, has a somewhat unusual provision.   Pursuant to §

6991c(d)(2), a state program can operate "in lieu of" the RCRA if the EPA Administrator formally approves

the state program for that purpose.   42 U.S.C. 6991c(d)(2).   For a state program to be approved, the

Administrator must determine, after "notice and opportunity for public comment," that the state program

"provides for adequate enforcement."   Section 6991c(d)(1).[15]   Thus, a state has an alternative to the federal

program:   If a state enacts its own underground storage tank program and gets it approved by the EPA

Administrator, the state program essentially replaces the federal regulations, and no conflict between the state

and federal program will exist.   But the clear negative implication of the approval requirement in §

---

[14]The Supremacy Clause dictates that "the Laws of the United States ... shall be the supreme Law of the Land;  and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.

[15]We seriously doubt that a state program that prohibits suit to compel remediation when the federal statute expressly permits such a suit could ever constitute adequate enforcement.  But we need not decide that, because the EPA Administrator has never approved Florida's program.

We also note in passing that citizen suits under the RCRA may survive the EPA Administrator's approval for a state program to operate instead of the RCRA, *see Ashoff v. City of Ukiah,* 130 F.3d 409, 411 (9th Cir.1997) ("RCRA authorizes citizen suits in approved states."), which is another issue we have no occasion to decide.

6991c(d)(2) is that if a state does not get its underground storage tank program approved, the state cannot operate its program in place of the federal program.

Our conclusion about the negative implication of § 6991c(d)(2) is supported not only by common sense, but also by the Supreme Court's *Gade* decision. *Gade,* 505 U.S. 88, 112 S.Ct. 2374, 120 L.Ed.2d 73. In that case, a majority of the Court found preemption based upon a similar inference it drew from § 18(b) of the Occupational Safety and Health Act, 29 U.S.C. § 651 *et seq.*[16] That statutory provision states "that a State 'shall' submit a plan if it wishes to 'assume responsibility' for 'development and enforcement ... of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated.' " *Id.* at 99, 112 S.Ct. 2374. The Court held that § 18(b) preempted "any state law or regulation that establishes an occupational health and safety standard on an issue for which OSHA has already promulgated a standard, unless the State has obtained the Secretary's approval for its own plan." *Id.* at 97, 112 S.Ct. 2374 (citation omitted). The Court reasoned that "[t]he unavoidable implication of [the approval requirement] is that a State may not enforce its own occupational safety and health standards without obtaining the Secretary's approval...." *Id.* at 99, 112 S.Ct. 2374.

The Supreme Court in *Gade* also reasoned that two other provisions of the Occupational Safety and Health Act supported its reading of the approval requirement of § 18(b). The first provision was § 18(c), 29 U.S.C. § 667(c), "which sets forth the conditions that must be satisfied before the Secretary can approve a plan submitted by a State under subsection (b)." *Id.* at 100, 112 S.Ct. 2374. The Court said, "If a State could supplement federal regulations without undergoing the § 18(b) approval process, then the protections that § 18(c) offers ... would easily be undercut. It would make little sense to impose such a condition on state programs intended to supplant federal regulation and not those that merely supplement it...." *Id.* at 100-01,

---

[16]Four justices concluded in *Gade* that the existence of § 18(b) of the Occupational Safety and Health Act impliedly preempted the state program involved in that case, *see Gade,* 505 U.S. at 91, 98-99, 112 S.Ct. at 2379, 2383, while a fifth justice was of the opinion that § 18(b) expressly preempted the program, *see id.* at 109-14, 112 S.Ct. at 2388-91. In such a circumstance the narrowest ground is the holding of the Court. *See Marks v. United States,* 430 U.S. 188, 193-94, 97 S.Ct. 990, 993-94, 51 L.Ed.2d 260 (1977). For that reason, we hereafter refer to the implied preemption ground and reasoning of the four justices in *Gade* as that of the Court.

112 S.Ct. 2374. The second provision was § 18(f) of the Act, which "gives the Secretary the authority to withdraw her approval of a state plan. 29 U.S.C. § 667(f). Once approval is withdrawn, the plan 'cease[s] to be in effect' and the State is permitted to assert jurisdiction under its occupational health and safety law only for those cases 'commenced before the withdrawal of the plan.' " *Id.* at 101, 112 S.Ct. 2374. The Supreme Court said, " § 18(f) assumes that the State loses the power to enforce all of its occupational safety and health standards once approval is withdrawn." *Id.*

The RCRA also has provisions that set forth the conditions of the EPA Administrator's approval and allow the Administrator to withdraw approval. *See* 42 U.S.C. § 6991c. As the Supreme Court recognized with respect to the Occupational Safety and Health Act in *Gade,* we think that these RCRA provisions reinforce our reading of the approval requirement in § 6991c(d)(2)—that if a state does not have its plan approved, it cannot operate its program in lieu of the federal program.[17]

As previously discussed, Florida has a comprehensive statutory scheme to regulate contamination caused by underground storage tanks. *See* Fla. Stat. ch. 376. Its program, however, has never been approved by the EPA Administrator.[18] Because Florida's underground storage tank program has not been approved pursuant to the RCRA, which would have allowed Florida law to supplant or replace federal law, the Florida program is preempted to the extent there is a conflict.

---

[17]One difference between the Occupational Safety and Health Act and the RCRA is that the RCRA has a savings clause to permit states to pass more stringent regulations, while the Occupational Safety and Health Act does not. In fact, *Gade* itself concerned an objection to a state enacting more stringent regulations. *Gade,* 505 U.S. at 93-94, 112 S.Ct. 2374. Although the state's enactment of more stringent regulations without approval is impermissible under the Occupational Safety and Health Act, *Gade,* 505 U.S. at 101-04, 112 S.Ct. 2374, such an enactment would be permissible under the RCRA. That difference, however, does not change our analysis—the Florida program cannot operate in lieu of the federal program because it has not been approved. Florida does, however, retain the power to enact more stringent standards. *See infra* note 20.

[18]The parties do not contest that the Florida program has not been approved. The defendants do, however, point to a Memorandum of Agreement between the EPA and the FDEP in support of their position that the Florida law is not preempted by the RCRA. The Memorandum of Agreement appears to authorize the FDEP to jointly implement the RCRA's underground storage tank program with the EPA. However, it expressly states that it does not constitute "approval" as required by the statute and the regulations.

"In making the determination of whether state law conflicts with federal law, the test to apply is whether 'it is impossible to comply with both state and federal law' or whether 'the state law stands as an obstacle to the accomplishment of the full purposes and objectives' of federal law." *Feikema,* 16 F.3d at 1413 (quoting *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984)). Here Florida law is an obstacle to the accomplishment of the RCRA's full purposes and objectives. Under § 376.308(5) of the Florida Statutes, the Boyes cannot sue to obtain the relief that they are seeking—remediation of the petroleum contamination. Under 42 U.S.C. § 6972, the citizen suit provision of the RCRA, they can.[19] *Compare* 42 U.S.C. § 6972(a) *with* Fla. Stat. § 376.308(5) (prohibiting Florida courts from ordering any person to remediate petroleum contamination from underground storage tank discharges on a site that is eligible for EDI cleanup prior to the date Florida commits funds). If allowed to operate in lieu of the RCRA, the Florida statute would patently "interfere[ ] with the methods by which the federal statute was designed to reach [its] goal." *Gade,* 505 U.S. at 103, 112 S.Ct. 2374 (quotation and citation omitted). To borrow the Third Circuit's metaphor, the RCRA sets a floor for regulation of hazardous waste, *see Old Bridge Chemicals,* 965 F.2d at 1296, and to allow the Florida program to restrict or limit the federal remedy would lower that floor.

Thus, Fla. Stat. § 376.308(5) is preempted because it conflicts with federal law, and the provisions of the RCRA govern.[20] The Boyes are entitled to bring their RCRA claims for remediation in federal court. The *Burford* and primary jurisdiction abstention doctrines are inapplicable.

### IV. CONCLUSION

---

[19]It is irrelevant that the statute of limitations for an action to compel cleanup is tolled until state funding is committed, and that the Boyes can still bring a civil action for damages or personal injury. *See* § 376.308(5). Because § 376.308(5) bars the Boyes' suit for immediate remediation, it does not provide the full relief permitted by the RCRA.

[20]The RCRA does contain a savings clause that allows a state to enact more stringent regulations. *See* 42 U.S.C. § 6991g. Section 376.308(5) of the Florida Statutes, however, is not saved from federal preemption by the RCRA's savings clause. It cannot be said that a state provision barring suit to enforce federal law is in any way more stringent than a federal law allowing such suit.

Because § 376.308(5) of the Florida Statutes, which prohibits the Boyes' suit for remediation, is preempted by 42 U.S.C. § 6972, the citizen suit provision of the RCRA, the district court abused its discretion in abstaining from hearing the Boyes' RCRA claims. Accordingly, we reverse the judgment of the district court dismissing the Boyes' RCRA claims, and remand for proceedings consistent with this opinion.[21]

REVERSED AND REMANDED.

---

[21]Our reversal of the district court's judgment moots the cost issue, which the Boyes raised on appeal.