**In re Pablo MARTINEZ, Debtor.**

**Pablo Martinez, Plaintiff,**

**v.**

**Law Offices of David J. Stern, P.A., Defendant.**

**Bankruptcy No. 99–42274–BKC–RAM.**

**Adversary No. 00–1118–BKC–RAM–A.**

United States Bankruptcy Court, S.D. Florida.

May 30, 2001.

Order Denying Rehearing July 6, 2001.

Order Awarding Attorney Fees Aug. 22, 2001.

Lawrence Shoot, Miami, Florida, for debtor.

Becket and Lee LLP, Newark, NJ, Arthur E. Lewis, Plantation, FL, Andrew D. Zaron, Ft. Flauderdale, FL, for creditor.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROBERT A. MARK, Chief Judge.

The cross-motions for summary judgment filed in this proceeding raise an issue

of law under § 1692g of the Fair Debt Collection Practices Act ("FDCPA"). The issue is whether the defendant/ debt collector provided effective notice to the plaintiff/ consumer of the consumer's rights under 15 U.S.C. § 1692g pursuant to the hypothetical least sophisticated consumer standard. For the reasons set forth below, the plaintiff's motion will be granted and the defendant's motion denied.

### Factual and Procedural Background

The material facts are undisputed. On June 30, 1992, the plaintiff, Pablo Martinez ("Plaintiff" or "Debtor"), his wife Anna Martinez and Eduardo Martinez executed a mortgage in the amount of $70,791.00 in favor of American Trust Mortgage Corporation. Union Planters Bank, N.A. ("Union Planters"), by virtue of a series of assignments, became the owner and holder of the mortgage. On September 16, 1999, the defendant, the Law Offices of David J. Stern, P.A. (the "Defendant"), as counsel for Union Planters, prepared, filed and caused to be served a foreclosure action against the Debtor and the other individuals who executed the mortgage (the "Foreclosure Action"). The Defendant had no prior contact or communication with the Debtor and the service of the foreclosure summons, complaint and items contained therewith was the initial communication between the parties (the "Initial Communication").

The Initial Communication contained 16 pages of documents. In sequence, the package began with the summons (two pages), a lis pendens (two pages) and a Complaint to Foreclose Mortgage (three pages). The eighth page of the package was the document which constitutes the focus of this proceeding, entitled Notice Required By The Fair Debt Collection Practice Act (the "FDCPA Notice") (one page), followed by a copy of the note, mortgage and attachments (eight pages).

On the first page of the summons, which was the first page of the Initial Communication, was the following statement: "IF YOU DO NOT FILE YOUR RESPONSE ON TIME, YOU MAY LOSE THE CASE, AND YOUR WAGES, MONEY AND PROPERTY MAY THEREAFTER BE TAKEN WITHOUT FURTHER WARNING FROM THE COURT."

The FDCPA Notice (eighth page) consisted of seven numbered paragraphs which contained the statutory language, including the following:

3. The debtor may dispute the validity of this debt or any portion thereof, within 30 days of receipt of this notice. If the debtor fails to dispute the debt within 30 days, the debt will be assumed valid by the creditor.

4. If the debtor notifies the creditor's law firm in writing within 30 days from receipt of this notice that the debt, or any portion thereof is disputed, the creditor's law firm will obtain verification of the debt or a copy of a judgment and a copy of the verification will be mailed to the debtor by the creditor's law firm.

On December 15, 1999, the Debtor filed a chapter 13 bankruptcy petition in this Court and the following day filed a suggestion of bankruptcy in the Foreclosure Action. On March 23, 2000, the Debtor filed this adversary proceeding. Count I alleged that the Defendant, as a debt collector, violated 15 U.S.C. § 1692g by not conveying effective notice of the Plaintiff's rights as required under the FDCPA. Count II alleged that the Defendant violated § 1692f, claiming it was an abusive debt collection practice to file a foreclosure complaint without first advising the Debtor that such a complaint was imminent. In a May 30, 2000 Order which granted in part Defendant's Motion to Dismiss, the Court dismissed the § 1692f claim, leaving only

the § 1692g claim at issue in this proceeding.

The parties filed cross-motions for summary judgment which were argued on January 8, 2001. In addition to the memoranda and oral arguments presented by the parties, the Court considered the amicus brief and oral argument presented by Wells Fargo Mortgage, Inc. ("Wells Fargo") in support of the Defendant's Motion. After further briefing, the Court conducted a second hearing on the cross motions for summary judgment on February 12, 2001. The Court has now fully considered the record including the memoranda and supplemental memoranda submitted by the parties and by Wells Fargo, the oral arguments presented at the two hearings and applicable law.

### Summary of the Law

 The FDCPA was enacted to eliminate unscrupulous debt collection practices of consumer debts. *See* 15 U.S.C. § 1692; *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.1996); *see generally* O. Randolph Bragg, The Fair Debt Collection Practices Act, 1172 PLI/ Corp 917 (April, 2000). Quoting the applicable legislative history, the Eleventh Circuit has stated that in establishing the FDCPA, Congress recognized "the serious and widespread abuses in the [debt collection area] . . . [which] make this legislation necessary and appropriate." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1173 (11th Cir.1985) *quoting* S.Rep. No. 95–382, 95th Cong., 1st Sess., reprinted in 1977 U.S.Code Cong. & Ad.News 1695, 1697. Consistent with this goal, § 1692g obligates a debt collector, upon solicitation of payment on a consumer debt or within five days thereof, to provide a detailed validation notice ("Validation Notice") to the consumer. *See* 15 U.S.C. § 1692g.[1] The Validation Notice must include, *inter alia*, a statement that the debt's validity will be assumed unless it is disputed by the consumer within 30 days of receipt of the notice and an offer by the debt collector to provide information regarding the details and verification of the debt. *See id.* The ease of obtaining this information allows a consumer to arm himself to challenge the claimed amount or entirety of the debt prior to making payment. The notice provisions of § 1692g do not require any specific statement of the legal consequences of requesting such notice, namely, the obligation of a debt collector to cease collection efforts until the requested information is provided. This "cease and desist" charge is in the statute, but notice of the obligation is not explicitly required. *See* 15 U.S.C. § 1692g(b).

 A debt collector must ensure that notice of the right to dispute the debt is *actually* conveyed to the consumer, and that the notice is conveyed *effectively*. *See Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir.2000); *Russell*, 74 F.3d at 35; *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir.1991); *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir.1988); *Rabideau v. Management Adjustment Bureau*, 805 F.Supp. 1086, 1093 (W.D.N.Y.1992). The effectiveness of the notice is based on an objective standard of the manner in which a "least sophisticated consumer" would interpret the notice. *See Jeter*, 760 F.2d at 1175; *Russell*, 74 F.3d at 34 ("[T]he test is how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the

---

1. Although the FDCPA only applies to "debt collectors", the United States Supreme Court has ruled that attorneys who regularly "engage in consumer-debt-collection activity" fall within the scope of this definition. *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995).

average, everyday, common consumer—understands the notice he or she receives."). This standard allows for the protection of all consumers, the gullible and the shrewd. *See Wilson v. Quadramed Corp.*, 225 F.3d at 354. As described by the Seventh Circuit, this standard presumes a level of sophistication that "is low, close to the bottom of the sophistication meter." *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir.1996).

The least sophisticated consumer standard does contemplate a minimum level of sophistication which "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Wilson*, 225 F.3d at 354–55 (internal quotation marks and citations omitted); *see also Jang v. A.M. Miller & Assoc.*, 122 F.3d 480, 483–84 (7th Cir.1997). Moreover, in applying this objective standard, courts assume that the entire content of the notice was read by the consumer. *See Cavallaro v. Law Office of Shapiro & Kreisman*, 933 F.Supp. 1148, 1153 (E.D.N.Y.1996); *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir.1993) (A least sophisticated consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care."). Therefore, although the applicable standard is that of a consumer with a minimum level of sophistication, it assumes that a Validation Notice is read in its entirety, carefully and with some elementary level of understanding.

Numerous courts in various circuits have held that the mere inclusion of a Validation Notice within the first communication between a debt collector and a consumer does not necessarily satisfy the notice requirement of § 1692g. *See Rabideau*, 805 F.Supp. 1086; *see also Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir.1997); *Graziano*, 950 F.2d at 111; *Miller v. Payco–General American Credits, Inc.*, 943 F.2d 482 (4th Cir.1991); *Swanson*, 869 F.2d at 1225. These courts have reasoned that even where the bare bones of the required notice is present, § 1692g is nonetheless violated where the notice is "overshadowed or contradicted by accompanying messages from the debt collector." *Graziano*, 950 F.2d at 111; *Bartlett*, 128 F.3d at 500 (citing cases).[2]

In many cases, the conflicting or confusing message which results in a violation of the FDCPA is a payment demand that could influence the consumer to forego the statutory rights contained in the Validation Notice. *See generally* Bragg, The Fair Debt Collection Practices Act, 1172 PLI/ Corp 917 (citing and discussing cases). In cases involving such overlapping statements, the information provided in the Validation Notice may be accurate, and if it had been independently conveyed, would have been sufficient to inform a least sophisticated consumer of his rights. However, when coupled with language which could confuse a least sophisticated consumer or render the consumer uncertain on how to proceed, effective notice has not been conveyed. *See Marshall–Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir.2000) ("The key consideration is that the unsophisticat-

---

2. Contradictory or confusing language may also give rise to liability under § 1692e, which prohibits debt collectors from committing a "false, deceptive or misleading representation or means in connection with the collection of any debt." *See* 15 U.S.C. 1692e;

*see also Russell*, 74 F.3d at 35 ("[A] collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate."). Plaintiff did not allege a § 1692e violation, and therefore, that subsection is not at issue here.

ed consumer is to be protected against confusion whatever form it takes.") (internal quotation marks omitted); *see also Russell*, 74 F.3d at 35. It is the confusion based on the context of the notice which would lead the hypothetical least sophisticated consumer to be uncertain as to his statutory rights to dispute the debt and therefore eliminate the effectiveness of the statutory notice.

 There is a split in the circuits as to whether the effectiveness of a Validation Notice is an issue of law or fact. *See Wilson*, 225 F.3d at 353 fn. 2 (noting conflicting circuit decisions). This Court agrees with the Second, Third and Ninth circuits, and finds that since the standard applied is objective in nature, i.e., a hypothetical least sophisticated consumer, the determination is a question of law. *See id.; Terran v. Kaplan*, 109 F.3d 1428, 1432–33 (9th Cir.1997); *Russell*, 74 F.3d at 35; *but see Walker v. National Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir.1999). The parties here agree that this is an issue of law and that there are no genuine issues of material fact to be decided.

### Analysis

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c) made applicable by Fed.R.Bankr.P. 7056; *Trucks, Inc. v. United States of America*, 234 F.3d 1340 (11th Cir.2000).

 Upon careful consideration of the FDCPA Notice in the instant case, as viewed from the perspective of a hypothetical least sophisticated consumer, the Court finds that Plaintiff's motion for summary judgment should be granted. The

Initial Communication in this case was a 16 page package which included a summons and complaint. The FDCPA Notice was on page eight, while the dire consequences of not responding to the complaint were set out in bold on the summons on the first page. Viewed in its entirety, the Court finds that a hypothetical least sophisticated consumer would have been confused and uncertain of his rights. As such, the FDCPA Notice did not provide effective notice and therefore violated § 1692g.

In *Graziano*, the Third Circuit held that the notice of the right to dispute the debt was not effectively conveyed to the debtor where a ten day demand for payment and the threat of a lawsuit if payment was not made accompanied the Validation Notice. *See* 950 F.2d at 111. The court found that it was a reasonable possibility that "the least sophisticated debtor, faced with a demand for payment within ten days and a threat of immediate legal action if payment is not made in that time, would be induced to overlook his statutory right to dispute the debt within thirty days." *Id.* at 111.

Although in the instant case the return date on the summons was set for thirty days following receipt, presumably to coincide with the thirty day period to dispute the debt under § 1692g, the confusion and uncertainty arising from the conflict between the summons and the FDCPA Notice is similar to the conflicts which created liability in *Graziano*. The summons, which was the first page of the Initial Communication, required a response to the complaint and set forth dire consequences for failure to comply. The Validation Notice on the eighth page described a very different option, namely, the right to dispute the debt and request verification. As a matter of law, exercise of this latter right requires a debt collector to cease collection efforts until the verification is provided to the consumer. As described by the Third

Circuit, "the juxtaposition of two inconsistent statements . . . rendered the statutory notice invalid under section 1692g." *Id.* at 111; *see also Bartlett,* 128 F.3d at 500 ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but . . . the letter confuses."). The same is true here. Even though the summons and the FDCPA Notice both had 30 day return dates, the conflicting statements rendered the FDCPA Notice ineffective.

In another sense, the facts here are more compelling than in *Graziano.* In *Graziano,* the letter which accompanied the Validation Notice merely threatened legal action unless the debt was resolved. *See* 950 F.2d at 111. Here, we have not the threat of a lawsuit, but the actual commencement of a legal action. Simple a *fortiori* logic suggests that a least sophisticated consumer would be more compelled to obey the fulfillment of a threat than the threat itself.

The Court's conclusion that the Defendant violated § 1692g is also supported by *Adams v. Law Offices of Stuckert & Yates,* 926 F.Supp. 521 (E.D.Pa.1996). Like the Defendant here, the defendant law firm in *Adams* provided the consumer with the statutorily mandated Validation Notice. However, strong language preceded such notice, including statements that failure to make "prompt" or immediate payment on the debt might result in a lawsuit, and payment was the only way for the consumer to "avoid trouble". *See id.* at 524–25. Citing *Graziano* and *Russell,* the court explained that "extraneous language is considered overshadowing or contradictory if it would cause the least sophisticated debtor to become confused or uncertain as to his rights under the FDCPA." *Id.* at 527. In granting summary judgment in

favor of the consumer, the court held that the harsh language, from the perspective of a least sophisticated consumer, overshadowed the included Validation Notice in violation of § 1692g. *See id.* at 527.

Here, the FDCPA Notice was in a package that began with a summons containing language even more blistering than that in *Adams.* The ominous sentence, "IF YOU DO NOT FILE YOUR RESPONSE ON TIME, YOU MAY LOSE THE CASE, AND YOUR WAGES, MONEY AND PROPERTY MAY THEREAFTER BE TAKEN WITHOUT FURTHER WARNING FROM THE COURT" on the first page of the Initial Communication would cause a least sophisticated consumer to heed the warning and choose to answer the complaint. This threatened consequence set out in bold language leads the Court to the inescapable conclusion that a least sophisticated consumer would not fully understand or appreciate the FDCPA Notice. The language in the summons would induce the consumer to answer the complaint to prevent the harsh result threatened therein. Therefore, no effective notice was provided.

The confusion created by the Initial Communication was evident during oral argument on the summary judgment motions. During the January 8th hearing, the Court asked Defendant's counsel what the effect would have been on the time frame to file a responsive pleading to the complaint if the Debtor had requested validation of the debt pursuant to the FDCPA Notice. Notably, even after caucusing with co-counsel, Defendant's lead attorney was unable to define the Debtor's rights and obligations upon receipt of a single enclosure which included both a Validation Notice and a foreclosure complaint. It would be difficult to find that the Initial Communication conveyed effective notice to a hypothetical least sophisticated con-

sumer when both the Court and Defendant's counsel had difficulty harmonizing the compounded effect of a summons and Validation Notice. *See Bartlett,* 128 F.3d at 501 ("nor as an original matter could we doubt that the letter to [the debtor] was confusing—we found it so, and do not like to think of ourselves as your average unsophisticated consumer.").

At the February 12th hearing, the Court once again questioned Defendant's counsel what a hypothetical least sophisticated consumer ought to have done upon receipt of the Initial Communication. Counsel's response to the Court's inquiry was that since the Initial Communication demanded an answer to the complaint within thirty days and also gave notice of the right to dispute the debt within the same time period, the consumer can simply do both. This response is virtually an admission that the Initial Communication is confusing.

▮ Upon acting upon a Validation Notice by disputing the debt, a consumer is under no obligation to respond to the complaint until, at the earliest, the debt collector responds with the requested information. *See* 15 U.S.C. § 1692g(b). It mischaracterizes the law to suggest that it is satisfactory for a least sophisticated consumer to be induced to respond to a complaint within the time set forth in the summons, when, as a matter of law, that time is statutorily extended if there is a request for the validation of his debt. Only a consumer at best uncertain as to his rights would come to this conclusion. *See Bartlett,* 128 F.3d at 500–01 ("A contradiction is just one means of inducing confusion.").

This result would also run contrary to the stated goals of the FDCPA. By filing a signed responsive pleading with a court, the consumer is bound to the statements of law or facts contained therein. A consum-

er is statutorily provided with an opportunity to learn many of the details surrounding the applicable debt *prior* to responding to the debt collector, and filing a sworn answer unnecessarily limits such a right.

Defendant's counsel's final argument is that despite any potential confusion based on context, the Defendant complied with the FDCPA because the Initial Communication contained the substantive notice required by the plain language of § 1692g. The legislature did not require a debt collector to do more than provide the specifically enumerated information to a consumer upon the attempted collection of a debt. *See United States v. Lewis,* 67 F.3d 225, 228 (9th Cir.1995) ("[C]anons of statutory construction dictate that if the language of a statute is clear, we look no further than that language in determining the statute's meaning."). Therefore, according to the Defendant, the FDCPA notice requirements are satisfied by the simple enclosure of the specific rights enumerated in the statute.

▮ The Court rejects the Defendant's position. Although the plain language of the statute is controlling as to the substantive information that must be provided through the notice, the manner and sufficiency of the notice may still be set and weighed by the courts. As stated above, the long standing rule in this Circuit and others is that the FDCPA requires effective notice to be conveyed pursuant to the least sophisticated consumer standard. *See Jeter,* 760 F.2d at 1175; *Wilson,* 225 F.3d at 354. As Judge Posner explained in *Bartlett,*

[I]t is implicit that the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the

unsophisticated debtors who are the particular objects of the statute's solicitude. 128 F.3d at 500.

■■■ For the reasons discussed, the Defendant's FDCPA Notice violated § 1692g since it did not provide effective notice consistent with the applicable least sophisticated consumer standard. For guidance, the Court offers the following simple suggestion for satisfying the statute where inclusion of a Validation Notice with other documents might lead a consumer to be uncertain or indefinite as to his rights: to prevent confusion, a debt collector should provide clarity. Specifically, if two or more messages would deliver mixed guidance to a least sophisticated consumer as to his rights under the FDCPA, reconciling language ought to be utilized to provide effective notice.

Other courts have found it appropriate to provide some direction to practitioners in analyzing what constitutes effective notice under the FDCPA, including, in particular, the Seventh Circuit's comprehensive discussion in *Bartlett.* *See* 128 F.3d 497. There, Judge Posner proposed that reconciling language between two seemingly contradictory or confusing provisions setting deadlines for a debtor to act could remedy the overshadowing. *See id.* at 501–02. In fact, the *Bartlett* opinion set forth a hypothetical letter which would act as a safe harbor if a debt collector chose to include the FDCPA notice provision and a seven day demand for payment of the amount owed in the same document. *See id.* The hypothetical letter ends with the following statement:

> The law does not require me [the debt collector] to wait until the end of the thirty-day period before suing you [the consumer] to collect this debt. If, how-

ever, you request proof of the debt or the name and address of the original creditor within the thirty-day period which begins with your receipt of this letter, the law requires me to suspend my efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you.

*Id.* at 502.

This Court affirmatively approves the Seventh Circuit's safe harbor in *Bartlett.* Similar reconciling language included on page eight of the Initial Communication could have avoided the statutory violation in this proceeding, providing the required notice without sacrificing efficiency.[3] Such language would harmonize and explain the consumer's obligations in responding to the lawsuit when, in the same communication, the consumer is advised of his statutory rights under the FDCPA.

In sum, the Court finds that the notice provided by the Defendant in the Initial Communication was not effective in light of the applicable hypothetical least sophisticated consumer standard. In coming to this result, the Court is guided by the United States Supreme Court's admonition in *FTC v. Colgate–Palmolive Co.,* where in a case also involving consumer protection issues, the Supreme Court stated:

> [I]t does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.

380 U.S. 374, 393, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965) (internal quotation marks omitted) quoting *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367 (1952).

---

**3.** Once again, it should be noted that as stated in fn. 1, there are other statutory considerations applicable to a debt collector under § 1692, and the instant discussion is limited to § 1692g.

The Defendant took the risk, crossed the line and violated federal law.

### Damages

 A debt collector who violates the FDCPA is liable for actual damages sustained as a result of the violation (§ 1692k(a)(1)), additional damages (the "Statutory Damages") up to $1,000.00 (§ 1692k(a)(2)(A)) and the plaintiff's costs and reasonable attorney's fees (§ 1692k(a)(3)). The statute sets forth certain non-exhaustive factors for a court to consider in determining the amount of liability for actual and statutory damages, namely (1) the frequency and persistence of noncompliance; (2) the nature of the noncompliance; and (3) the extent to which the noncompliance was intentional. *See* § 1692k(b).

 These factors are not applicable to the award of costs and attorney's fees. As summarized by the Third Circuit in *Graziano,*

> Given the structure of [§ 1692k], attorney's fees should *not* be construed as a special or discretionary remedy; rather the [FDCPA] *mandates* an award of attorney's fees as a means of fulfilling Congress's intent that the [FDCPA] should be enforced by debtors acting as private attorneys general. 950 F.2d at 113 (emphasis added).

 In determining the amount of damages in the instant proceeding, the Court first finds that the Plaintiff neither alleged nor submitted proof of any actual damages. In applying the factors to determine whether to award Statutory Damages, the Court finds that the Defendant ordinarily and regularly violated the statutory requirements of § 1692g. In fact, the Defendant emphasized that it regularly included a Validation Notice in the same form of the Initial Communication served on the Plaintiff in this case. Indeed, the Defendant stressed the hardship which would fall on collection attorneys if they were required to change the form and manner in which they must convey effective notice. Next, the Court finds that the nature of the noncompliance was moderate. The Defendant provided the notice required by the statute, but failed to meet the hypothetical least sophisticated standard because the notice was overshadowed by other information in the Initial Communication.

Finally, the Court finds that the violation was, if not intentional, then measured. As stated earlier, the Defendant in this action is a law firm and the abundant case law, including numerous opinions from federal circuit courts, clearly sets forth the standard upon which a debt collector must operate. Moreover, while it is on opinion from another circuit, Defendant could easily have looked to Judge Posner's "safe haven" language in *Bartlett, see* 128 F.3d at 501, and included similar language adequately explaining the Debtor's rights upon receipt of both a summons and the Validation Notice. It chose not to do so and must now face the consequences.

The Court concludes that the Defendant is liable for the 1,000.00 maximum amount of Statutory Damages and further liable for the costs and attorney's fees incurred in the prosecution of this proceeding.

Having concluded that Defendant violated 15 U.S.C. § 1692g, it is

**ORDERED** as follows:

1. The Debtor's Motion for Summary Judgment is **GRANTED.**

2. The Defendant's Motion for Summary Judgment is **DENIED.**

3. The debtor is awarded statutory damages in the amount of $1,000.00 plus the costs of the action, together with a reasonable attorney's fee to be determined

by the Court. No later than June 18, 2001, Plaintiff's counsel shall file a motion to award fees and costs together with an exhibit detailing the time expended and costs incurred in prosecuting the complaint in this proceeding. The Defendant shall have until July 3, 2001 to file an objection and request for hearing, failing which the Plaintiff may submit an order awarding the fees and costs sought in the motion.

4. The Court will enter a separate Judgment after it fixes the amount of fees and costs to be awarded.

## ORDER DENYING DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT

On January 8, 2001 and February 12, 2001, the Court conducted hearings on the Debtor's Motion for Summary Judgment and the Defendant's Cross–Motion for Summary Judgment and took the matter under advisement. After fully considering the parties' briefs and the relevant case law, on May 30, 2001, the Court entered a Memorandum Opinion and Order Granting the Debtor's Motion for Summary Judgment and Denying the Defendant's Cross Motion for Summary Judgment (the "Memorandum Opinion"). On June 11, 2001, the Defendant filed a Motion to Alter or Amend Judgment (the "Motion for Rehearing"). After reviewing the findings of fact and the conclusions of law in the Memorandum Opinion, the relevant legal standards for rehearing and the grounds for relief set forth in the Motion for Rehearing, the Court finds that the Motion for Rehearing should be denied.

"A motion for reconsideration should raise new issues, not merely address issues litigated previously." *Socialist Workers Party v. Leahy,* 957 F.Supp. 1262, 1263 (S.D.Fla.1997) (citing *Government Personnel Services, Inc. v. Govern-*

*ment Personnel Mutual Life Ins. Co.,* 759 F.Supp. 792, 793 (M.D.Fla.1991)).

The motion should also demonstrate why the court should reconsider its prior decisions, and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. The Court will not reconsider its decision when a motion does not raise new issues, but only relitigates what has already [been] found to be lacking.

*Gelles v. Skrotsky,* 15 F.Supp.2d. 1293, 1294 (M.D.Fla.1998) (citations omitted).

Courts generally consider only three grounds that may justify granting reconsideration of an order: "1) an intervening change in controlling law; 2) the availability of new evidence; and 3) the need to correct clear error or manifest injustice." *Securities and Exchange Commission v. Seahawk Deep Ocean Technology,* 74 F.Supp.2d 1188, 1192 (M.D.Fla. 1999) (citations omitted). Furthermore, "[i]n the interests of finality and conservation of scarce judicial resources, reconsideration of a previous order is an extraordinary remedy to be employed sparingly." *Id.*

The Defendant makes three arguments, each of which fail to warrant modification of the Memorandum Opinion under the foregoing legal standard. First, the Defendant argues that it should not be held responsible for the strong language included in the summons for it is the exact language approved by the Florida Supreme Court for use in a summons. *See* Form 1.902, Florida Rules of Civil Procedure. The Court rejects this contention, finding that it overlooks the focus of the Memorandum Opinion. Set alone, this Court finds no problem with the language approved by the Florida Supreme Court for use in a summons. The problem arose in the instant case because the summons was included in a single enclosure which

also contained a validation notice required under § 1692g of the Fair Debt Collection Practices Act (the "FDCPA"). Case law has determined that only effective notice pursuant to a least sophisticated consumer standard may satisfy the notice requirements of § 1692g. *See Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1173 (11th Cir.1985); *Russell v. Equifax A.R.S.,* 74 F.3d 30, 33 (2d Cir.1996). Derived therefrom, courts have ruled that language which would confuse a least sophisticated consumer or render the consumer uncertain on how to proceed would obviate such notice, thus violating the statute. *See Marshall–Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326 (7th Cir.2000); *Russell,* 74 F.3d at 35. In short, the fact that the Defendant used an approved form summons does not affect the Court's decision. It is not the specific language in the summons that renders the notice ineffective; it is its coupling with the validation notice which created liability in the instant case.

Second, the Defendant argues that the Court did not consider *Ferree v. Marianos,* 1997 WL 687693 (10th Cir.1997). In fact, the Court did review *Ferree* prior to issuing the Memorandum opinion. In *Ferree,* there is a dearth of information relating to the specifics of the makeup of the enclosure received by the consumer. The only provided facts are that both the validation notice and the foreclosure pleadings arrived to the consumer in the same envelope. *See Ferree,* 1997 WL 687693, at *2. Moreover, as stated in the opinion, the plaintiff in *Ferree* conceded that the 20 day response date on the summons and 30 day period to dispute the debt were not mutually exclusive. There are numerous facts which distinguish the instant case from *Ferree,* including the harsh language on the first page of the summons and the fact that the FDCPA Notice was on the eighth page of a sixteen page enclosure. These

factual differences, along with the weight of the other circuit cases cited in the Memorandum Opinion resulted in the Court considering *Ferree,* but not deeming it sufficiently persuasive to sustain the Defendant's position.

This Court's decision not to cite to or discuss *Ferree* in the Memorandum Opinion was not an oversight. *Ferree* is an unpublished decision which contained the following language on p. 1, f.n.* of the opinion:

This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The Court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir.R. 36.3

Tenth Circuit Rule 36.3 provides in pertinent part:

(B) Citation of an unpublished decision is disfavored. But an unpublished decision may be cited if:

(1) it has persuasive value with respect to a material issue that has not been in a published opinion; and

(2) it would assist the court in its disposition.

Given the very limited discussion of the relevant issue in *Ferree* and in light of the several published decisions from other circuit courts of appeal, this Court did not find it necessary or appropriate under the 10th Circuit rules to cite *Ferree* in the Memorandum Opinion.

Third, the Defendant argues that the Court misinterpreted the law in stating that the time period to respond to the complaint is "statutorily extended" upon a request by a consumer for the validation of his debt. The Defendant argues that the statute does not specifically extend the

Debtor's time to answer, but rather precludes the debt collector from seeking a default. This appears to be the Defendant's third interpretation of how a validation request would have affected the Debtor's obligation to answer the complaint. As noted in the Memorandum Opinion, at the January 8, 2001 hearing, the Defendant's attorney could not state with certainty when the Debtor would have been required to answer the Complaint if he exercised his rights under the validation notice. At the February 12th hearing, counsel suggested that if uncertain, the Debtor could file an answer on the 30th day. Now, the Defendant appears to be arguing that the Defendant was *required* to answer in 30 days, arguing that the statute affected only the Defendant's right to proceed with collection if a validation letter was sent, not the Debtor's obligation to answer.

Rather than supporting a request for reconsideration, the Court finds this argument to be yet a further indication of the problem created by the Defendant's decision to include the FDCPA validation notice with the summons and complaint without any language reconciling the potential confusion. Whether the Defendant's interpretation of 1692g(b) is correct or not, it does not change the result. Even if (which is not conceded) the Court was incorrect in stating in its Memorandum Opinion that "as a matter of law, [the time to answer] is statutorily extended if there is a request for the validation of his debt," the Court's conclusion is unaffected. The notice provided by the Defendant in the Initial Communication was not effective. *See Lamar Advertising of Mobile, Inc. v. City of Lakeland, Florida,* 189 F.R.D. 480, 488 (M.D.Fla.1999) (A motion to reconsider must "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.") (internal citations omitted.)

In sum, the Plaintiff has raised nothing new in the Motion for Rehearing. There has been no intervening change in the law, nor the presentation of new evidence. *Williamson* and *Alton* are directly on point and binding on this Court. There has been no manifest injustice. Therefore, it is—

**ORDERED** that the Defendant's Motion for Rehearing is denied.

## ORDER AWARDING ATTORNEY'S FEES TO PLAINTIFF'S COUNSEL

On May 30, 2001, this Court entered its Memorandum Opinion and Order Granting Plaintiff's Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgment (the "Memorandum Opinion"). The Summary Judgment Order found that the Defendant violated § 1692(g) of the Fair Debt Collection Practices Act ("FDCPA"). The Court awarded $1,000 in statutory damages to the Debtor/Plaintiff plus a reasonable attorney's fee to be determined by further Order.

On June 18, 2001, in furtherance of the Summary Judgment Order, Plaintiff's attorney, Lawrence M. Shoot, Esq., filed a Motion to Award Attorneys Fees (the "Fee Motion"). On July 27, 2001, Defendant filed its Response to Motion to Award Fees (the "Defendant's Response") and on July 31, 2001, the Court conducted an evidentiary hearing on the Fee Motion. After considering the Fee Motion, Defendant's Response, the testimony of the respective expert witnesses for the Plaintiff and the Defendant, the arguments of counsel, applicable law and the entirety of the record, and for the reasons set forth below which are supplemented by the Court's statements at the hearing, the

Court is awarding *$29,037.50* in fees to Plaintiff's counsel.

### Legal Standards and Summary of Evidence

 15 U.S.C. § 1692k(a)(3) states that a consumer successful in a FDCPA action is entitled to an award of reasonable attorney's fees and costs. This provision is intended to encourage consumers and their attorneys to act as "private attorneys general" in order to enforce the FDCPA. *Baker v. G.C. Services Corp.,* 677 F.2d 775, 780 (9th Cir.1982); *Whatley v. Universal Collection Bureau Inc.,* 525 F.Supp. 1204, 1206 (N.D.Ga.1981).

 In determining fees, the Court must look at the factors generally applicable to fee awards under federal statute, including (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Norman v. Housing Authority of Montgomery,* 836 F.2d 1292 (11th Cir.1988) *citing Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).

In the instant case, the dispute regarding the appropriate fee focuses on primarily four issues: (1) the amount of hours actually expended by Plaintiff's counsel; (2) the reasonableness of the hours expended for various tasks; (3) the appropriate hourly rate; and (4) counsel's entitlement to a fee enhancement. The Court has reviewed and considered each of the *Johnson* factors but, in the interest of brevity, will address only the main areas of contention in this Order.

The Fee Motion requests attorney's fees in the amount of $100,000.00. According to the Fee Motion, this number is derived from (1) 250 hours of attorney time (only 175.6 hours of which was recorded in written record); (2) 40.5 hours of administrative/paralegal time at $75.00/hour; (3) an attorney billable rate of either $250.00 or $350.00 /hour; and (4) a fee enhancement of either $12,500.00 or $35,000.00, depending upon which hourly rate is used.

In support of the Fee Motion, Plaintiff offered the expert testimony of attorney Joseph Weiss. Although Mr. Weiss has no experience in the FDCPA arena, he reviewed the files and testified that Mr. Shoot should be compensated for 160 to 166 hours at a rate of $250.00 to $325.00 per hour for the work accomplished and the result obtained. Further, because of the contingent nature of recovery in a FDCPA action and the favorable result, he opined that a fee enhancement of between 1.1 to 1.3 % would be appropriate. In sum, Mr. Weiss testified that an appropriate fee for Mr. Shoot would be between *$44,000.00* and *$70,135.00*, depending upon the number of hours, hourly rate and enhancement multiplier applied.

Defendant presented the report and testimony of J.W. Bonie, an attorney from St. Petersburg, Florida who specializes in FDCPA cases. Mr. Bonie reviewed all of Mr. Shoot's time records and concluded that the necessary and reasonable time to complete the litigation was only sixty-four (64) hours. Mr. Bonie also testified that a reasonable hourly rate in the Middle District of Florida for attorneys handling FDCPA cases like this one would range

from $195 to $225, yielding a fee of between *$12,480* and *$14,400*.

### Results Obtained

 The Eleventh Circuit has held that upon a determination of the appropriate award of attorney's fees, "the most critical factor is the degree of success obtained." *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir.2001) *quoting Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (dealing with statutory fees under 42 U.S.C. § 1988). Defendant's counsel acknowledges that the Plaintiff won, but argues that because the Plaintiff did not prevail on two of the three counts alleged in the complaint, fees should not be awarded for time spent on those counts.

 The Court rejects this argument for reducing the fees. *See Hensley*, 461 U.S. at 435, 103 S.Ct. 1933; *Villano*, 254 F.3d at 1308; In *Villano*, the Eleventh Circuit addressed this issue and stated that

> [w]hen the results achieved are excellent, the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Acknowledging that parties in good faith may raise alternative legal grounds for a desired outcome, the Supreme Court has instructed that the district court should focus on the significance of the overall relief obtained by the plaintiff.

254 F.3d at 1308 (internal citations and quotations omitted). In other words, fees are awarded based on the success of the litigation, and any and all reasonable measures taken by counsel leading to such a result deserve remuneration. Arguing alternative theories may enhance a party's chances for victory in a lawsuit, and this practice should not be discouraged by allowing compensation only for the time spent on the prevailing claim.

### Unrecorded Time

 As noted earlier, Mr. Shoot's Fee Motion claims that he spent approximately 75 hours on the case which were not recorded. Accurately and contemporaneously recording time is fundamental to an analysis of fees under the lodestar approach. Therefore, without further discussion, the Court rejects Mr. Shoot's request for payment for hours expended which were not recorded and will not award any fees for the alleged 175 hours of unrecorded time which represents the difference between the 165 hours of recorded attorney time and the asserted 250 hours of total time spent.

### Billing Rate

 "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *See Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994) *quoting Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988). The United States Supreme Court has stated that the determination of "an appropriate 'market rate' for the services of a lawyer is inherently difficult." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "The party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with the prevailing market rates." *Loranger*, 10 F.3d at 781 (internal quotations omitted). "A court, however, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgement either with or without the aid of witnesses as to value." *Id.* (internal quotations omitted).

Neither party presented compelling testimony on the prevailing market rate for a lawyer handling a Plaintiff's FDCPA case in the Southern District of Florida. Plaintiff's expert practices in the Southern District, but does not litigate FDCPA cases, casting some doubt on the basis for his opinion that an hourly rate between $250 and $325 would be reasonable. Conversely, Defendant's expert, Mr. Bonie, is an experienced FDCPA lawyer. However, he practices in the Middle District of Florida where hourly rates are generally lower than in the Southern District of Florida. This weakens the relevance of his testimony that Middle District of Florida FDCPA lawyers charge between $195 and $225 per hour.

■■■ The Court finds that $200.00 /hour is a reasonable billing rate for Mr. Shoot in this case. The Court's conclusion is based in part on the expert testimony, and in part on a combination of factors, including (1) Mr. Shoot's reputation and experience, including his limited experience in FDCPA cases; (2) the Court's determination that although the instant facts were somewhat different from other reported case law, the law at issue in this adversary proceeding was not excessively complex; (3) the number of hours Mr. Shoot billed for particular tasks which a higher priced experienced FDCPA attorney could have accomplished in less time; and (4) Mr. Shoot's standard business practice of charging $185.00 /hour to clients as in the instant case.

### Inconsistencies in the Fee Motion

■■■ Defendant's counsel argued in the Defendant's Response as well as at oral argument that the hours set forth in the Fee Motion were overstated. In support of this position, Defendant's counsel introduced into evidence a letter sent by Mr. Shoot to the Defendant dated December 18, 2000 (the "December 18th Letter").

The letter included an attachment detailing the hours spent by Mr. Shoot on the case through November 2, 2000. The December 18th Letter states that the total number of hours expended by Mr. Shoot was 67.8 while the Fee Motion states that in the same time period he spent 117.1 hours. Numerous examples were provided by Defendant's counsel of inconsistencies which are troubling to the Court, specifically where virtually identical tasks on the same date were set forth as one time amount in the December 18th Letter and another (larger number) in the Fee Motion.

Mr. Shoot explained this seemingly irreconcilable conflict by testifying that the heading of the December 18th Letter stated that the enclosed hours were the "Core" hours expended during the course of the adversary proceeding, and that issues of pride and a hopeful settlement led him to reduce these hours for tasks performed. The Court was not persuaded by Mr. Shoot's explanation and is disallowing the 39.1 hours in time included in the Fee Motion, but not included in the December 18th letter.

### Determination of Reasonable Hours

As explained above, the Court is allowing 67.8 hours of time through November 2, 2000. According to Mr. Shoot's fee records which were attached to the Fee Motion, Mr. Shoot spent an additional 68.7 hours from November 2, 2000 until June 17, 2001, which comes to a total of 136.5 hours. Mr. Shoot's own expert found some hours to be unreasonable and limited the total he believed compensable to between 160 to 166 hours. Mr. Bonie found a significantly larger amount of the hours excessive. Upon consideration of the expert opinions, the Court's review of the time entries, the hourly rate applied and other factors including the time disallowed for the period through November 2, 2000

and the contingent nature of the fees, the Court is allowing a total of 130 hours. In coming to this conclusion, the Court is overruling, in large part, the reductions recommended by Mr. Bonie, including his opinion that Mr. Shoot should not be paid for the time spent in the state class action case to avoid the consequences of the Plaintiff not initially "opting out" of the class action settlement. In addition, the Court finds that Mr. Shoot is entitled to be compensated for the 40.5 hours of paralegal/administrative time in full at $75.00 /hour.

### Fee Enhancement

▆▆▆ This Court has previously held that "fee enhancements are rare," as the "presumption is that the lodestar amount constitutes reasonable compensation under § 330 of the Bankruptcy Code." *In re Atlas*, 202 B.R. 1019, 1022 (Bankr.S.D.Fla. 1996) (citing cases). Moreover, any such fee enhancement award is within the sole discretion of the bankruptcy court. *See In re Hillsborough Holdings Corp., et al.*, 221 B.R. 917 (Bankr.M.D.Fla.1998) *citing Hensley*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40. In *Atlas*, this Court cited the Eleventh Circuit's decision in *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 880–81 (11th Cir.1990) which is also applicable here as it sets forth certain factors for a court to review regarding the award of a fee enhancement, including (1) the risk of non-payment; (2) exceptional results; and (3) superior representation.

▆▆▆ In the instant case, the Court finds that a fee enhancement is not warranted. Although the Plaintiff's litigation in the instant adversary proceeding was indeed successful, that alone does not lead this Court to waver from the lodestar method. If that were true, every victor would seek enhanced fees from the vanquished party. So too with the caliber of pleadings and service provided by Mr.

Shoot on behalf of his client. An attorney is expected to perform to a reasonable level within the scope of his employment and that in and of itself does not merit an enhancement. Moreover, neither Mr. Shoot's pleadings nor courtroom presentation rise to the level of "superior representation", although they were by no means below the level of reasonableness.

### Conclusion

For the reasons stated above, the Court rules that Mr. Shoot is entitled to a total fee award of *$29,037.50* consisting of 130 hours of attorney time at $200/hour ($26,-000) plus 40.5 hours of paralegal time at $75/hour ($3,097.50). Therefore, it is—

**ORDERED** as follows:

1. The Fee Motion is granted in part and denied in part.

2. Mr. Shoot is awarded $29,037.50 in fees which will be included in the Final Judgment entered in this proceeding.